UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| **MELISSA D. BALL, individually and on behalf of other similarly situated,** ) ) ) **Plaintiffs,** ) ) **vs.** ) ) **UNITED GT CORPORATION,** ) ) **Defendant.** ) | **Cause No. 2:08-cv-253-WTL-WGH** |

**ENTRY ON MOTION FOR PARTIAL SUMMARY JUDGMENT**

Before the Court is the Plaintiffs' Motion for Partial Summary Judgment (Docket No. 53). The motion is fully briefed, and the Court, being duly advised, **GRANTS IN PART AND DENIES IN PART** the motion for the reasons, and to the extent, set forth below.

**I. SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Finally, the non-moving party bears

the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II.  BACKGROUND

The Plaintiffs, Melissa D. Ball, Julie Littlejohn, and Travis Williams, are former employees of the Defendant, United GT Corporation ("United GT").  All three Plaintiffs worked as cashiers at United GT's Terre Haute, Indiana convenience store.  The Plaintiffs claim that United GT has a policy of docking its workers' wages if certain losses accrue during the employee's shift.[1]  They also assert that United GT deducts funds from employees' paychecks for employee purchases, does not pay overtime wages when employees work more than forty hours in a given week, and "falsif[ies] payroll records to treat employees as though they worked fewer hours . . . to reduce the wages paid to its employees."  Pl. Br. at 2-3.

The Plaintiffs now seek a ruling that the Defendants violated the Fair Labor Standards Act ("FLSA"), the Indiana Wage Claims Statute, and the Indiana Wage Payment Statute.  The Plaintiffs assert that they are entitled to summary judgment because, in its interrogatory answers, the Defendant "admitted its long-standing policy of docking the wages of its employees for disciplinary events such as cash register shortages, store theft[,] and customers who pump gas but do not pay."  Pl. Br. at 5.  In response, the Defendant claims that a language barrier led to a "misunderstanding about disciplinary wage deductions."  Response at 2.  The Defendant now avers that its answers to the interrogatories were incorrect and that "United GT at no time had a

---

[1] For example, the Plaintiffs allege that their wages were docked if the cash register was short at the end of their shift, if customers pumped gas without paying for it, if items were shoplifted, or if government fines were assessed against United GT.

wage docking policy for gasoline pump and runs, cash register shortages[,] and cigarette/lottery shortages." *Id.* The Defendant claims that it mistakenly believed that the interrogatories asked whether United GT made wage deductions for "store purchases and loans." *Id.* at 1.

### III.  DISCUSSION

Not surprisingly, the Plaintiffs take issue with the Defendant's "general, blanket retraction of . . . earlier sworn interrogatory answers." Reply at 3. The Plaintiffs vigorously assert that the Defendant cannot "create a question of material fact and survive summary judgment by submitting an affidavit in which the party contradicts earlier sworn testimony." *Id.* at 5. The majority of this circuit's case law on contradictory affidavits relates to affidavits that contradict deposition testimony, but the same rule applies in this case. In general, the non-moving party cannot contradict deposition testimony or interrogatory answers with later-filed contradictory affidavits. *See, e.g.*, *LaFary v. Rogers Group, Inc.*, 591 F.3d 903, 908 (7th Cir. 2010); *Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005); *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996). However, the Seventh Circuit has ameliorated this seemingly harsh rule in recognition of the fact that "while a change in testimony is often a clear ruse, it is sometimes plausible." *Patton v. MFS/Sun Life Fin. Distribs., Inc.*, 480 F.3d 478, 488 (7th Cir. 2007). "A number of scenarios might explain a change: a confusing deposition question, circumstances indicating a lapse of memory, relevant new information . . . , or ambiguous or incomplete earlier testimony." *Id.* (citations omitted). "Consequently, a court must examine the particular circumstances of a change in testimony to see whether it is plainly incredible or merely creates a credibility issue for the jury." *Id.*

In the instant case, the Defendant's affidavit avers that it "does not dock employees[']

3

wages for gasoline pump and runs, cash register shortages[,] and cigarette/lottery shortages." Def. Ex. 1 ¶ 10.  In addition, the affidavit explains, "the undersigned [owner of United GT] misunderstood counsel's questions and believed when discussing wage deductions it involved store purchases and loans." *Id.* ¶ 15.  At a later meeting to complete the interrogatories "[t]he undersigned again misunderstood counsel when asked about wage deductions for gasoline pump and runs, cashier register shortages[,] and cigarette/lottery shortages." *Id.* ¶ 17.  On both occasions "[t]he undersigned . . . mistakenly believed that counsel was asking about wage deductions for store purchases and loans." *Id.* ¶ 18.  The affidavit further explains that "[t]he undersigned is from India" and a "language barrier between counsel and the undesigned caused the misunderstanding concerning wage deductions for store purchases and loans as opposed to gasoline pump and runs, cash register shortages[,] and cigarette/lottery shortages." *Id.* ¶¶ 21-22.  Finally, the Defendant explains that "United GT employees can charge store purchases" and "[w]age deductions are taken at the end of each pay period for the store purchases." *Id.* ¶¶ 25, 27.  In addition, "[l]oans are made to employees" and although these loans are "by agreement," they are not in writing. *Id.* ¶ 28-29.  Like the deductions for store purchases, these loans are repaid "through a wage deduction at the end of each pay period." *Id.* ¶ 30.

      Clearly the Defendant's affidavit contradicts its interrogatory answers, and contradiction goes to the heart of the case.  The FLSA simply does not allow employees and employers to enter into agreements whereby the employee reimburses the employer's cost of doing business.  As the Fifth Circuit succinctly state in *Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1197 (5th Cir. 1972), "[a]n agreement that an employee will repay . . . his employer any shortages in money entrusted to him, when shortages occur through misappropriation, theft, or

4

otherwise, violates the minimum wage requirements of the [FLSA] to the extent that such required payments reduce below the minimum wage the amount of money and compensation which the employee receives." The instant case seems even more egregious, as the Plaintiffs claim that they never agreed to United GT's wage deduction policy. If the Defendant had policy whereby its cashiers were required to repay shortages for theft or misappropriation, then the Defendant violated the FLSA. However, the Defendant's express denial of the policy's existence creates a credibility issue, which must be decided by the jury. Although a jury may not look favorably upon the Defendant's change in interrogatory answers in midst of this litigation, this is an issue for the jury, not the Court, to resolve. Accordingly, the Plaintiff's motion is **DENIED** as to the FLSA claim.

Turning to the Plaintiffs' state law claims, the Plaintiffs allege causes of action under both the Indiana Wage Payment Statute, IND. CODE 22-2-5, and the Indiana Wage Claims Statute, IND. CODE 22-2-9. As the Indiana Supreme Court explained in *St. Vincent Hospital & Health Care Center, Inc. v. Steele*, 776 N.E.2d 699, 705 (Ind. 2002),

> the Wage Claims Statute and the Wage Payment Statute set forth two different procedural frameworks for wage disputes, [and] each statute applies to different categories of claimants. The Wage Claims Statute references employees who have been separated from work by their employer and employees whose work has been suspended as a result of an industrial dispute. By contrast, the Wage Payment Statute references current employees and those who have voluntarily left employment, either permanently or temporarily.

In *St. Vincent*, the court noted that because the plaintiff "was a current employee of St. Vincent at the time of the wage dispute, he proceeded correctly under the Wage Payment Statute." *Id*. Subsequently, in *Naugle v. Beech Grove City Schools*, 864 N.E.2d 1058, 1061 n.1 (Ind. 2007), the court relied on *St. Vincent* and declined to address the plaintiffs' Wage Claim action because

the plaintiffs had not pursued an administrative remedy as statutorily required. Instead, the *Naugle* court confined its analysis to the plaintiffs' Wage Payment action. In the instant case, the Plaintiffs' Complaint avers that "Ball's Indiana wage claim arises under I.C. 22-2-5-1 et seq. [the Wage Payment Statute], as she remains an employee of United GT." Compl. ¶ 34. However, "[s]he anticipates that other members of the class will have similar claims arising under I.C. 22-2-9-2 and 22-2-9-4 [the Wage Claims Statute] . . . as other will have been involuntarily terminated from employment by United GT." *Id.* The Plaintiffs have provided absolutely no documentation, other than their bald assertion in their Complaint, that any Plaintiff was "involuntarily separated from their employment" or has submitted a wage claim to the Department of Labor as is statutorily required. *Lemon v. Wishard Health Servs.*, 902 N.E.2d 297, 300 (Ind. Ct. App. 2009). Accordingly, like the supreme court in *Naugle*, this Court will confine its analysis to the Plaintiffs' Wage Payment claim.

> Of particular import in this case is Indiana Code 22-2-6-2(a), which provides:
>
> Any assignment of the wages of an employee is valid only if all of the following conditions are satisfied: (1) The assignment is: (A) in writing; (B) signed by the employee personally; (C) by its terms revocable at any time by the employee upon written notice to the employer; and (D) agreed to in writing by the employer. (2) An executed copy of the assignment is delivered to the employer within ten . . . days after its execution. (3) The assignment is made for a purpose described in subsection (b).

Subsection (b) lists the only permissible reasons for wage assignments. Relevant here are numbers six – an assignment for the "[p]urchase price of merchandise sold by the employer to the employee, at the written request of the employee" – and seven – an assignment for the "[a]mount of a loan made to the employee by the employer and evidenced by a written instrument executed by the employee subject to the amount limits set forth in section 4(c) of this

chapter." IND. CODE 22-2-6-2(a)(6)-(7).

The Defendant acknowledges that although the store purchases and loans were "at the request of and signed for by the employee," neither the agreement to make store purchases, nor the loan agreements, were in writing as required by 22-2-6-2(a). Response at 6. In addition, with respect to the store purchases, United GT admits that it further violated "22-2-6-2(a)(2) because a receipt documenting the store purchase was not returned to the employee within ten days of execution." *Id.* As to the loan agreements, they were not reduced to writing, signed by both parties, and did not include revocation language, all of which violates the statute. *Id.* Given the Defendant's admissions, there is no genuine issue as to any material fact and the Plaintiffs are entitled to judgment as a matter of law. Accordingly, the Plaintiffs' motion is **GRANTED** as to the Plaintiffs' Indiana Wage Payment claim.[2]

## CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion for Partial Summary Judgment (Docket No. 53) is **GRANTED** as to the Plaintiffs' Indiana Wage Payment Act claim and **DENIED** as to the Plaintiffs' FLSA claim.

SO ORDERED: 02/22/2010

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

---

[2] The Court notes the Defendant's half-hearted attempt to argue that at least part of the Indiana Wage Payment statute does not apply because the parties are engaged in a "'good faith' dispute regarding wages," the parties' dispute does not "involve a dispute as to the amount owed," and there was no "conversion of wages." Response at 7. *Cox v. Town of Rome City*, 764 N.E.2d 242, 250 (Ind. Ct. App. 2002), defeats the Defendant's argument. In *Cox*, the court refused to recognize a good faith exception to 22-2-6-2 because "the statute is clear that the assignment of wages must be signed by the employee personally." Absent a written assignment signed by the employee, any claimed assignment was invalid and the employee was entitled to summary judgment.

Copies to:

David P. Friedrich
Wilkinson Goeller Modesitt Wilkinson and Drummy
dpfriedrich@wilkinsonlaw.com

Robert Peter Kondras Jr.
Hunt Hassler & Lorenz LLP
kondras@huntlawfirm.net